UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————————————

No. 99-30550

———————————————————————

United States of America, <u>ex rel</u>. William Garibaldi
and Carlos Samuel,

Plaintiffs/Appellees/Cross-Appellants,

v.

Orleans Parish School Board,

Defendant/Appellant/Cross-Appellee.

———————————————————————

No. 99-30668

———————————————————————

United States of America, <u>ex rel</u>. William Garibaldi
and Carlos Samuel,

Plaintiffs/Appellees,

v.

Orleans Parish School Board,

Defendant/Appellant.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana

———————————————————————

March 28, 2001

Before DAVIS and EMILIO M. GARZA, Circuit Judges, and POGUE[*],
Judge.

W. EUGENE DAVIS, Circuit Judge:

William Garibaldi and Carlos Samuel (whom we sometimes refer

to jointly as the Relators) sued their employer, the Orleans Parish

———————————————

[*]Judge, U.S. Court of International Trade, sitting by
designation.

School Board on behalf of the United States for numerous violations of the False Claims Act, 31 U.S.C. § 3729, et seq. After trial, a jury found that the School Board had submitted more than 1500 false claims to the federal government over the course of 11 years. The district court subsequently entered a judgment on the verdict against the School Board of almost $23 million. The School Board and the Relators now challenge the district court's judgment. The United States has intervened in this appeal to defend its interpretation of the False Claims Act. Because we find that a local government such as the School Board is not subject to liability under the False Claims Act, we vacate the judgment entered by the district court and render judgment for the School Board.

I.

In 1995, Garibaldi was Director of the Audit Department of the School Board and Samuel was an Auditor working under Garibaldi's direction. In that year, Samuel began an audit of the Risk Management Department of the School Board. During the audit, Samuel discovered what he thought were substantial problems in two of the programs administered by the Risk Management Department, namely the School Board's unemployment compensation insurance program and its workers' compensation insurance program.

Samuel's audit of the Risk Management Department turned up what he concluded were disproportionate allocations of the costs of unemployment compensation insurance and workers' compensation

insurance to the portions of the School Board's budget financed by the federal government. In particular, Samuel discovered that the School Board was charging substantially higher rates per payroll dollar for unemployment insurance to the School Board's programs that were financed by the federal government. Samuel was unable to find any justification for this disparity and also found that other generally accepted methods of cost allocation would charge the federal government substantially less. As for the School Board's workers' compensation insurance program, Samuel discovered that the School Board had unfairly allocated the savings it had achieved from switching to self-insurance in the early 1990s. Samuel discovered that federally financed programs paid about 25% of the cost of the School Board's workers' compensation insurance before it switched to a self-insurance program. However, the School Board never reduced the contribution of the federal government to its workers' compensation insurance program to account for the large savings it realized by switching to self-insurance.

Samuel took his findings to his supervisor Garibaldi. They prepared a report which set forth their conclusions that the allocation of premiums for the School Board's unemployment compensation and workers' compensation insurance programs was seriously flawed. They also alleged that these flaws constituted a violation of applicable federal accounting principles and the False Claims Act. The Relators sent their report to Morris Holmes, then Superintendent of the school system. Concerned with the

conclusions of the report, Holmes asked the chief financial officer of the school system, James Henderson, to review the findings of the Relators. Henderson refuted every finding of the Relators and found that the accounting decisions made by the School Board were fully justified and in line with applicable federal accounting principles. Holmes then retained KPMG Peat Marwick, the School Board's longtime outside auditor, and another accounting firm, Bruno & Tervalon, to settle the dispute between the Relators and Henderson and to pass on the propriety of the School Board's accounting decisions. The two accounting firms sided with Henderson and specifically found that the School Board had never violated applicable federal accounting principles or the False Claims Act.

As a result of this dispute and the conclusions reached by the two accounting firms, the School Board fired Samuel, who was still a probationary employee, and placed Garibaldi on paid suspension pending a hearing that would allow the School Board to terminate him.

## II.

Less than thirty days after Samuel was fired and Garibaldi suspended, the two Relators filed this lawsuit. Invoking the qui tam provisions of the False Claims Act, 31 U.S.C. § 3730, they alleged, on behalf of the United States, that the School Board had submitted numerous false claims to the United States over the course of eleven years as a result of the alleged accounting

-4-

improprieties recounted above. They also alleged that they had been retaliated against for bringing these improprieties to light, in violation of the protections the False Claims Act gives to whistleblowers. See 31 U.S.C. § 3730(h). The United States chose not to exercise its right, granted by 31 U.S.C. § 3730(b)(4)(a), to intervene in the action and take over its prosecution, and so the Relators pressed forward on their own.

Following nine days of testimony, the jury returned its verdict in favor of the Relators. The jury found that the School Board had submitted 1570 false claims to the federal government over the course of 11 years. It found that the federal government had sustained actual damages as a result of these false claims of $7.6 million, which was the sum of $4.6 million in damages from the School Board's unemployment compensation insurance program and $3 million from the workers' compensation insurance program. The jury also found that both Samuel and Garibaldi had suffered illegal retaliation for bringing these allegations to light. It found that each had suffered damages of $65,000 for pain and suffering connected with the retaliation, and that Samuel had lost $103,000 in wages as a result of his termination.

The district court entered judgment on the basis of the findings made by the jury. It ordered the School Board to pay treble damages, per the requirements of 31 U.S.C. § 3729(a), of $22.8 million and a civil penalty of $7.85 million, which was the product of 1570 false claims and the statutory minimum penalty of

-5-

$5000 per false claim. See 31 U.S.C. § 3729(a). It also awarded each of the Relators the $65,000 in damages for pain and suffering and awarded Samuel $206,000 in back wages, which was twice the actual amount of back wages per 31 U.S.C. § 3730(h).[1] As their bounty for successful prosecution of the action, the district court awarded the Relators 25% of the damages and civil penalty payable to the United States. Finally, the district court also awarded the Relators attorney's fees, expenses, and costs.

Following entry of judgment by the district court, the School Board moved for judgment as a matter of law under Fed. R. Civ. P. 50(b). The Relators moved to amend the judgment, arguing that the jury had improperly calculated the damages arising from the School Board's unemployment compensation insurance program. The Relators also moved to have their share of the award payable to the United States increased to the statutory maximum of 30%.

The district court denied all the motions. United States ex rel. Garibaldi v. Orleans Parish Sch. Bd., 46 F.Supp.2d 546 (E.D. La. 1999). However, the district court, acting sua sponte, did alter the judgment in two respects. Finding that the jury had miscalculated the amount of damages payable as a result of the School Board's workers' compensation insurance program, the district court reduced that portion of the damage award from $3

[1]The portion of the judgment that represents damages payable directly to the Relators based on their retaliation claim has been satisfied by the School Board. Only the judgment in favor of the United States is at issue in this appeal.

million to $2,699,952. This had the effect of reducing the treble damages to $21,899,856. The district court, acting on the authority of Peterson v. Weinberger, 508 F.2d 45 (5th Cir. 1975), also reduced the civil penalty from $7.85 million to $100,000.

The School Board raises several issues in its appeal, including that a local government such as it may not be held liable under the False Claims Act. In their appeal, the Relators argue that the district court erred in reducing the civil penalty to be paid by the School Board and that it abused its discretion in not awarding the Relators the statutory maximum share of the award payable to the United States. The United States has intervened in this appeal to assert its interpretation of the False Claims Act.

III.

We begin with the issue we find dispositive, namely whether a local government such as the School Board may be held liable under the False Claims Act. The answer to this question requires us to interpret the language of a federal statute, a question of law which we review de novo. United States v. Soape, 169 F.3d 257, 262 (5th Cir. 1999), cert. denied, 527 U.S. 1011, 119 S.Ct. 2353, 144 L.Ed.2d 249 (1999).

The issue before us can be simply stated. Does the School Board qualify as, "Any person" under the False Claims Act? The False Claims Act makes, "Any person" who, inter alia, knowingly presents a false claim to the federal government for payment, liable for treble damages and a civil penalty of between $5000 and

$10,000 per false claim.  31 U.S.C. § 3729(a).  The School Board argues that, as a local government, it is not a person under the False Claims Act.[2]  The Relators, and the United States, argue that the School Board is a person under the False Claims Act.  The term person in the liability provisions of the False Claims Act is not defined in the statute.[3]  31 U.S.C. § 3729.  The issue is one of first impression for this court, and for the courts of appeal generally.  Those district courts that have considered the issue are divided.  See United States ex rel. Chandler v. Hektoen Inst. for Med. Research, 118 F.Supp.2d 902 (N.D. Ill. 2000) (Cook County,

---

[2]The Orleans Parish School Board is a body corporate with the power to sue and be sued, to make contracts, to purchase and hold property and to sell property.  La. Rev. Stat. Ann. §§ 17:51, 17:81, 17:83, 17:87.6 (West 2000).  It has the power to levy taxes on property within the City of New Orleans to support its operations.  La. Const., art. 8, § 13.  It is not an arm of, and has an identity separate and distinct from, the State of Louisiana.  Minton v. St. Bernard Parish Sch. Bd., 803 F.2d 129, 131-32 (5th Cir. 1986).

[3]The Relators point to legislative history from the 1986 amendments to the False Claims Act that concludes, they argue, that local governments are persons for purposes of the False Claims Act.  See S. REP. NO. 99-345, at 8, reprinted in 1986 U.S.C.C.A.N. 5266, 5273 (stating, on the basis of the holding in Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), that local governments are persons for purposes of the False Claims Act).  The problem with this legislative history is twofold.  First, it cites to a case concerned with an entirely different federal statute, namely 42 U.S.C. § 1983.  Second, the term person has been in the statute since it was first enacted in 1863.  This report is thus post-enactment legislative history, and, "utterly irrelevant" to determining the meaning of the term person in the liability portions of the False Claims Act.  Vermont Agency of Natural Res. v. United States ex rel. Stevens, ___ U.S. ___, 120 S.Ct. 1858, 1868 n. 12, 146 L.Ed.2d 836 (2000).

Illinois not a person under the False Claims Act); <u>United States ex rel. Dunleavy v. County of Delaware</u>, No. CIV. A. 94-7000, 2000 WL 1522854 (E.D. Pa. Oct. 12, 2000) (Delaware County, Pennsylvania not a person under the False Claims Act); <u>United States ex rel. Giles v. Sardie</u>, No. CV-96-2002 LGB (Rcx) (C.D. Cal. Aug. 1, 2000) (City of Los Angeles, California is a person under the False Claims Act).

In considering the issue before us, we pause first to discuss an important development in the law interpreting the False Claims Act that occurred during the pendency of this appeal. In May of 2000 the Supreme Court decided <u>Vermont Agency of Natural Res. v. United States ex rel. Stevens</u>, ___ U.S. ___, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). In <u>Stevens</u>, the Supreme Court held that states are not persons for purposes of the False Claims Act. Though <u>Stevens</u> does not decide the question presented by this case, the Court's reasoning does shed some light on whether local governments are persons for purposes of the False Claims Act.[4]

In <u>Stevens</u>, Jonathan Stevens sued his former employer, the Vermont Agency of Natural Resources, under the False Claims Act for

_____

[4]Prior to the Supreme Court's decision in <u>Stevens</u>, we have located only two decisions (other than that by the district court in this case), both from district courts, that decided whether local governments are considered persons for purposes of the False Claims Act. These two decisions reached opposite conclusions. See <u>United States ex rel. Chandler v. Hektoen Inst. for Med. Research</u>, 35 F.Supp.2d 1078 (N.D. Ill. 1999), rev'd in part, 118 F.Supp.2d 902 (N.D. Ill. 2000) (Cook County, Illinois is a person under the False Claims Act); <u>United States ex rel. Graber v. City of New York</u>, 8 F.Supp.2d 343 (S.D.N.Y. 1998) (City of New York, New York is not a person under the False Claims Act).

allegedly overstating the amount of time some of the Agency's employees had spent on certain federally funded environmental projects. This resulted, he argued, in the federal government paying the Agency more than it was due under the various projects. The United States, as in this case, did not intervene in the action. The Agency moved to dismiss on the grounds that a state agency is not a person for purposes of the False Claims Act. The district court denied the motion and the Second Circuit affirmed. Id. at 1861.

The Supreme Court began its analysis in Stevens with the interpretive presumption that the term person does not include the sovereign. Id. at 1866-7; see also United States v. Cooper Corp., 312 U.S. 600, 604, 61 S.Ct. 742, 85 L.Ed. 1071 (1941); United States v. Mine Workers of America, 330 U.S. 258, 275, 67 S.Ct. 677, 91 L.Ed. 884 (1947). The Court then looked at the details of the False Claims Act for language that tended to either undermine or reinforce the presumption that states are not included in the term person. The Court found that three features of the False Claims Act served to reinforce the presumption that states are not persons for purposes of the False Claims Act.

First, the Court noted that the civil investigative demand provisions of the False Claims Act, 31 U.S.C. § 3733, contain a definition of the term person that includes states. 31 U.S.C. § 3733(l)(4). The Court said that, "the presence of such a definitional provision in § 3733, together with the absence of such

-10-

a provision from the definitional provisions contained in §
3729,...suggests that States are not 'persons' for purposes of qui
tam liability under § 3729."   Stevens, 120 S.Ct. at 1868-69
(footnote omitted).

Second, the Court held that the treble damages provisions of
the False Claims Act were, "essentially punitive in nature" and so
inconsistent with the presumption against imposition of punitive
damages on governmental entities.  Id. at 1869.  The Court held
that while the double damages regime of the False Claims Act which
had been in place before 1986 might have been characterized as
remedial, the treble damages regime added in 1986 when Congress
amended the False Claims Act is truly punitive.  Id. at 1869.

Third, the Court noted that the Program Fraud Civil Remedies
Act of 1986, which is an administrative scheme very similar to the
False Claims Act, contains a definition of person that does not
include states.  31 U.S.C. § 3801(a)(6).  The Court held that it
would be anomalous to subject states to the harsh damages regime of
the False Claims Act while not subjecting them to the relatively
light penalties of the Program Fraud Civil Remedies Act of 1986.
Id. at 1870.  Because of the presumption that the term person does
not include the sovereign, which was reinforced by the details of
the statutory scheme discussed above, the Court held that states
are not persons for purposes of the False Claims Act.

The holding in Stevens does not resolve the issue presented to
us in this case, nor is much of the reasoning in the opinion

particularly instructive in resolving the issue presented to us in this case.  Local governments do not enjoy the same sovereign status as states.  For example, sovereign immunity under the Eleventh Amendment does not extend to governmental entities which are not an arm of a state.  Alden v. Maine, 527 U.S. 706, 756, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999).  Thus, we cannot apply to the School Board the presumption that the term person does not include the sovereign.  Furthermore, other federal statutes that impose liability on "persons" cover local governments but not states. See, for example, Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 683-89, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (City of New York, New York is a person for the purposes of 42 U.S.C. § 1983); Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (State of Michigan is not a person for the purposes of 42 U.S.C. § 1983).  Nor is the Supreme Court's reasoning in Stevens regarding either the civil investigative demand provisions of the False Claims Act or the Program Fraud Civil Remedies Act of 1986 helpful to us in resolving the issue presented by this case given the School Board's organization as a body corporate.

However, one portion of the Supreme Court's opinion in Stevens does provide us with some guidance.  The False Claims Act imposes

punitive damages on those who violate it.[5] This is contrary to the well-settled presumption that governments, including local governments, are not subject to punitive damages. <u>Stevens</u>, 120 S.Ct. at 1869; <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 259-271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). As the Supreme Court has held, imposing punitive damages on local governments is ordinarily contrary to sound public policy. <u>Id</u>. at 263. Though a local government can properly be made to pay compensation for the wrongful acts of its agents, punishing a local government is pointless. The punishment, in the form of higher taxes or reduced public services, is visited upon the blameless. Neither the taxpayers nor the schoolchildren of Orleans Parish played any role in the conduct giving rise to the School Board's liability. Extracting damages from them - damages that are far more than is needed to compensate the federal government for whatever losses it has suffered - is supported, as the Supreme Court has said, by, "[n]either reason nor justice." <u>Id</u>. at 267.

Imposing punitive damages on a local government in favor of the federal government is especially problematic. Requiring such a transfer payment would reflect a judgment by Congress that denying the schoolchildren of Orleans Parish needed services, or

---

[5]Both the Relators and the United States argue that the damages regime of the False Claims Act is not truly punitive. While decisions prior to the Supreme Court's decision in <u>Stevens</u> may have supported such an argument, the Supreme Court's decision in <u>Stevens</u> is conclusive on this point. The treble damages imposed by the False Claims Act are punitive damages. <u>Stevens</u>, 120 S.Ct. at 1869.

requiring the taxpayers of Orleans Parish to pay higher taxes, is justified in light of the relatively minor benefit to the federal treasury.  Though Congress is free to make that determination if it chooses, we will not find such a choice absent clear language in the text of the False Claims Act.

The Relators and the United States argue that the definition of person in 1 U.S.C. § 1 (often called the Dictionary Act), which supplies definitions of certain terms when they are otherwise undefined in the statute, requires us to define person in the liability provisions of the False Claims Act as including local governments.  They argue that Monell, 436 U.S. at 688-9, holds exactly that.  The School Board argues, on the basis of Ngiraingas v. Sanchez, 495 U.S. 182, 110 S.Ct. 1737, 109 L.Ed.2d 163 (1990) and the legislative history quoted therein, that the definition of person in the Dictionary Act does not include local governments. We need not, and do not, choose between these two arguments because, by its own terms, the definitions in the Dictionary Act do not apply when the context of a statute indicates that Congress intends another meaning.

In Rowland v. California Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993) the Supreme Court held that an unincorporated association of prisoners could not proceed in forma pauperis under 28 U.S.C. § 1915.[6]  The

---

[6]The Court explained that the statute, which has since been amended, provided that, "a qualifying person may 'commenc[e],

-14-

prisoners' association argued that it was a person under the in forma pauperis statute because the statute did not define the term person and the Dictionary Act encompasses associations in the term person.  Id. at 719-27.  The Court pointed out that certain features of the in forma pauperis statute suggested that Congress did not intend to allow anyone except natural persons to proceed in forma pauperis.  The Court then considered the first sentence of the Dictionary Act, which provides that its definitions apply, "unless the context indicates otherwise."  1 U.S.C. § 1.  The Court concluded that the context of the statute indicated that the word person was intended to be used in a more limited sense than it was used in the Dictionary Act.  The Court said that,

> [O]ne can say that 'indicates' certainly imposes less of a burden than, say, 'requires' or 'necessitates.'  One can also say that this exception from the general rule would be superfluous if the context 'indicate[d] otherwise' only when use of the general definition would be incongruous enough to invoke the common mandate of statutory construction to avoid absurd results.  In fine, a contrary 'indication' may raise a specter short of inanity, and with something less than syllogistic force.

Rowland, 506 U.S. at 200-01 (internal citations and footnote omitted).  Thus, even if we were certain that the definition of person in the Dictionary Act includes local governments, we conclude that the punitive damages regime of the False Claims Act discussed above "indicates" a congressional intent that local

---

prosecut[e], or defen[d]...any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor.'" Rowland, 506 U.S. at 198.

governments not be subject to liability under the False Claims Act.

The United States has argued that we should vacate the punitive damage award payable by the School Board but still subject it to liability under the False Claims Act if we are troubled by the punitive damages of the False Claims Act.[7]  This would require us to rewrite the statute, something we will not do.  The False Claims Act already allows a reduction to double damages from treble damages in those cases where the defendant provides information to the federal government before any investigation is underway.  31 U.S.C. § 3729(a).  Given that Congress has already provided for a reduction in damages in certain cases, we will not read another exception into the statute based on the identity of the defendant.  Any person liable under the False Claims Act is liable, save for those exceptions enumerated in the statute, for treble damages.  See also Stevens, 120 S.Ct. at 1869 n. 16.

We are convinced that the punitive damages regime of the False Claims Act discussed above reflects a congressional intent that the term "person" in the liability provisions of the False Claims Act not include local governments.

IV.

Both the Relators and the United States argue that the Supreme

---

[7]The Relators' bounty for successful prosecution of this action is dependent on the total amount of damages payable by the School Board.  As such, they are not nearly as magnanimous as the United States and do not argue that we can reduce the damages payable by the School Board.

Court's interpretation of 42 U.S.C. § 1983 and the antitrust laws suggest the conclusion that local governments are persons for the liability portions of the False Claims Act.  See Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (42 U.S.C. § 1983); City of Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978) (antitrust laws).  However, our reading of these cases does not change our conclusion that local governments are not persons for purposes of the False Claims Act.

In Monell, the Supreme Court held that local governments are persons for the purposes of 42 U.S.C. § 1983.  Much of the opinion is concerned with the errors in the Court's decision in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), which had held that local governments are not persons for the purposes of 42 U.S.C. § 1983.  That discussion is not relevant to the issue presented by this case.  After reviewing why Monroe was wrongly decided, the Court went on to conclude that local governments are persons for the purposes of 42 U.S.C. § 1983.  The Court's conclusion was primarily based on the legislative history of 42 U.S.C. § 1983.  Predicated on this legislative history, the Court concluded that Congress intended to craft a very broad remedy, available to all citizens whose civil rights had been violated by those acting under the color of state law.  That is, Congress intended to create a broad remedial statute for violations by those acting under the color of state law.  Monell, 436 U.S. at 685-86.

-17-

More importantly, the Court concluded that the framers of 42 U.S.C. § 1983 had been especially concerned with takings of private property without just compensation by local governments. The Court said,

> Representative Bingham, for example, in discussing § 1 of the bill, explained that he had drafted § 1 of the Fourteenth Amendment with the case of <u>Barron v. Mayor of Baltimore</u>, 7 Pet. 243, 8 L.Ed. 672 (1833), especially in mind. 'In [that] case the city had taken private property for public use, without COMPENSATION...AND THERE WAS NO REDRESS FOR THE wrong....'' globe App. 84 (emphasis added). Bingham's remarks clearly indicate his view that such takings by cities, as had occurred in <u>Barron</u>, would be redressable under § 1 of the bill.

<u>Id</u>. at 686-87. Because 42 U.S.C. § 1983 targeted entities that acted under color of state law, the Court concluded that it would have been nonsensical to conclude that local governments are not persons for the purposes of 42 U.S.C. § 1983. <u>Id</u>. at 686-87.

The Court's holding in <u>Monell</u> is premised upon specific indications in the legislative history of 42 U.S.C. § 1983 that Congress intended for local governments to be within the reach of 42 U.S.C. § 1983. We find no similar indications in the legislative history of the False Claims Act. Indeed, the Supreme Court has observed that,

> As the historical context makes clear, and as we have often observed, the FCA was enacted in 1863 with the principal goal of 'stopping the massive frauds perpetrated by large [private] contractors during the Civil War.'...Its liability provision - the precursor to today's § 3729(a) - bore no indication that States were subject to its penalties.

<u>Stevens</u>, 120 S.Ct. at 1867 (quoting <u>United States v. Bornstein</u>, 423

-18-

U.S. 303, 309, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976) (bracketed material in original)); see also United States ex rel. Graber v. City of New York, 8 F.Supp.2d 343, 352 (S.D.N.Y. 1998). Neither the United States nor the Relators have supplied us with any authority that would show that the framers of the False Claims Act contemplated liability for local governments. Furthermore, the False Claims Act, unlike 42 U.S.C. § 1983, is not specifically targeted at those who act under color of state law. Thus, it would not be absurd, as it would be with 42 U.S.C. § 1983, to hold that local governments are not liable under the False Claims Act. We also note that the Supreme Court, relying on the presumption that local governments are not liable for punitive damages, has held that local governments are not liable for punitive damages under 42 U.S.C. § 1983. City of Newport, 453 U.S. at 271.

In City of Lafayette, the Court was faced with the question whether it should read an implied exception into the antitrust laws for commercial activity by local governments. The Court concluded that it should not. The Court said, "The presumption against repeal by implication reflects the understanding that the antitrust laws establish overarching and fundamental policies, a principle which argues with equal force against implied exclusions." City of Lafayette, 435 U.S. at 399. The Court also noted that, "'Language more comprehensive is difficult to conceive. On its face it shows a carefully studied attempt to bring within the Act every person engaged in business whose activities might restrain or monopolize

commercial intercourse among the states.'" Id. at 398 (quoting United States v. South-Eastern Underwriters Assn., 322 U.S. 533, 553, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944)). Given the fact that the antitrust laws establish such a fundamental and all-encompassing regulatory regime for commercial activity, the Court decided that it could not create an implied exclusion for local governments that go out into the marketplace and engage in this type of activity.

The Court's decision in City of Lafayette that local governments were subject to the antitrust laws, including liability for punitive damages, was premised on the notion that the antitrust laws were drafted with the clear purpose to reach all the nation's commercial activity. Exceptions to the antitrust laws would defeat those clear purposes. The False Claims Act and the antitrust laws are not analogous in this regard. Neither the United States nor the Relators have shown that the False Claims Act has the same broad scope as the antitrust laws. From the Supreme Court's decision in Stevens we know that the False Claims Act does not apply to states. The False Claims Act was enacted to reach fraud by private government contractors. We agree with the D.C. Circuit, which said, "Even if one assumes that states commit a good deal of fraud against the federal government, it cannot seriously be argued that the very purpose of the [False Claims] Act would be thwarted if states were not liable under the [False Claims] Act." United States ex rel. Long v. SCS Business & Technical Inst., Inc., 173 F.3d 870, 875 (D.C. Cir. 1999), cert. denied, ___ U.S. ___, 120

S.Ct. 2194, 147 L.Ed.2d 231 (2000). This conclusion is as applicable to local governments as it is to states.

In sum, because of the differences in scope and purpose between the False Claims Act and the antitrust laws, we are not persuaded that the Supreme Court's decision in City of Lafayette augurs in favor of a conclusion that local governments are persons for purposes of the False Claims Act.[8]

V.

The punitive damages regime of the False Claims Act shows a congressional intent that the False Claims Act should not be applied to local governments. There is no contrary expression of legislative intent and no purpose behind the False Claims Act that undermine that conclusion. For these reasons, we conclude that the term person in the liability provisions of the False Claims Act does not include local governments like the School Board. Therefore, the judgment of the district court is VACATED and judgment is RENDERED in favor of the Appellant, the Orleans Parish School Board.

JUDGMENT VACATED AND JUDGMENT RENDERED.

---

[8]We also note that following the Supreme Court's decision in City of Lafayette, Congress exempted local governments from all money damages payable under the antitrust laws. See The Local Government Antitrust Act of 1984, 15 U.S.C. §§ 34-36.