

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-29-2002

# Dunleavy v. County of Delaware

Precedential or Non-Precedential:

Docket 0-3691

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Dunleavy v. County of Delaware" (2002). *2002 Decisions.* Paper 49.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/49

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 29, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3691

UNITED STATES OF AMERICA EX REL.
ANTHONY J. DUNLEAVY

v.

COUNTY OF DELAWARE, MARIANNE GRACE,
EXECUTIVE DIRECTOR; THE COUNCIL OF THE COUNTY
OF DELAWARE, WALLACE H. NUNN, CHAIRMAN;
MATTHEW J. HAYES JR. AS ADMINISTRATOR OF THE
ESTATE OF MATTHEW J. HAYES

        Anthony J. Dunleavy,
            Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 94-cv-07000)
District Judge: Honorable Thomas N. O'Neill, Jr.

Argued December 7, 2001

Before: MANSMANN, ROTH and FUENTES, Circuit Ju dges.

(Filed: January 29, 2002)

        Regina D. Poserina, Esquire
         (ARGUED)
        7415 West Chester Pike
        Upper Darby, PA 19082

         COUNSEL FOR APPELLANT

Francis X. Crowley, Esquire
 (ARGUED)
Elisa Cohen Lacianca, Esquire
Blank, Rome, Comisky & McCauley
1400 North Providence Road
Suite 301
Media, PA 19063

 COUNSEL FOR APPELLEES

Stuart E. Schiffer
 Acting Assistant Attorney General
Michael L. Levy
 United States Attorney
Douglas N. Letter, Esquire
 (ARGUED)
United States Department of Justice
Civil Division, Appellate Staff
Room 9106
601 D Street, N.W.
Washington, D.C. 20530

 COUNSEL FOR AMICUS-
APPELLANT UNITED STATES OF
AMERICA

Brian Stuart Koukoutchos, Esquire
28 Eagle Trace
Mandeville, LA 70471

James Moorman, Esquire
Amy Wilken, Esquire
Taxpayers Against Fraud,
 The False Claims Act Legal Center
1220 19th St., NW, Suite 501
Washington, D.C. 20036

 COUNSEL FOR AMICUS CURIAE
TAXPAYERS AGAINST FRAUD,
THE FALSE CLAIMS ACT LEGAL
CENTER

2

OPINION OF THE COURT

MANSMANN, Circuit Judge.

The appellant, Anthony J. Dunleavy, was a consultant to appellee, Delaware County. In this capacity, Dunleavy advised the County as to the various federal regulatory requirements concerning certain Housing and Urban Development funding grants. Dunleavy sued the County contending that it committed several violations of the False Claims Act, 31 U.S.C. S 3729, et seq. The District Court dismissed Dunleavy's Second Amended Complaint, holding that the County was not amenable to suit under the FCA due to its mandatory punitive damages scheme. We agree. Therefore, we will affirm the Order of the District Court.

I.

This appeal requires us to determine whether a local governmental subdivision can be subject to suit under the False Claims Act when the Act mandates treble damages. We must first determine whether the treble damages mandated by the Act are punitive. If so, we must then decide whether Congress clearly manifested its intention under the FCA to abrogate local governmental common law immunity from punitive damage awards. If it did not, we must further determine whether a local governmental subdivision may nevertheless be amenable to suit under the Act albeit subject to some lesser quantum of damages. Finally, we note in passing that we agree with the District Court that an employee of a local governmental unit is not subject to suit under the Act when the employee does not personally benefit from the transaction constituting a violation of the Act; therefore, we conclude that no extended discussion is necessary with respect to this issue.

II.

In 1976, Delaware County purchased the Penza tract in a condemnation action using HUD funds. The intended use of the Penza tract was to expand a pre-existing park. In

3

1979, however, the County entered into an agreement with the Pennsylvania Department of Transportation (Penn DOT) whereby Penn DOT purchased 26.3 acres of the Penza tract. Penn DOT made additional purchases from the tract through the years until its final purchase from the County in 1988. Penn DOT intended to use the land for highway construction. After consulting with Dunleavy, the County decided that it would put the proceeds from the sales of Penza tract land into an interest-bearing account under the assumption that if Penn DOT was unable to use its newly acquired lands for highway construction the County would repurchase the land. On the other hand, if Penn DOT completed its highway construction, the County would return the proceeds from the land sales, plus interest to HUD. After numerous delays, Penn DOT completed its highway construction project in 1991.

During the interim, the County occasionally used funds from the Penza tract account for general County purposes. Dunleavy contends that this was improper, because, in his view, the funds in the account were HUD program funds subject to various reporting requirements with which the County failed to comply. Further, Dunleavy contends that once the County knew that it would not be repurchasing the tract, the County knowingly failed to return the principal and interest earned on the account to HUD. Dunleavy's final contention is that the County fraudulently received additional monies from HUD in fiscal years `92, `93, `94, and `95 because the County took these monies knowing that it committed the previously alleged violations of HUD regulations with respect to Penza Tract funds.

Dunleavy filed this action in 1994 seeking treble damages as required by the False Claims Act. In 1995, the Government declined to intervene, concluding that no fraud had been committed. HUD, however, after a Limited Review Audit, demanded that the County pay it 1.7 million dollars plus interest. In 1996, HUD and the County settled the dispute between them without including Dunleavy in the settlement process.1

_____

1. The False Claims Act permits the Government to settle with the Defendant notwithstanding the objections of the person initiating the

4

The District Court dismissed Dunleavy's Second Amended Complaint for lack of subject matter jurisdiction, a Judgment that we reversed and remanded to the District Court. The County then filed motions to dismiss for failure to state a claim and failure to plead with particularity, which were denied by the District Court. On May 23, 2000, the District Court, on its own motion, directed the parties to brief the question of whether this action should proceed in light of the United States Supreme Court's decision in Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765 (2000). The District Court concluded that Dunleavy's claim could not proceed in light of Stevens. See United States ex rel. Dunleavy v. County of Delaware, 2000 WL 1522854 (E.D.P.A. 2000). This timely appeal followed.2

We begin our analysis with a brief discussion of the legal framework controlling the resolution of this appeal.

III.

Unless Congress clearly provides otherwise, a local governmental entity is immune from punitive damages awards. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981) (holding that a municipality was immune from punitive damages awards under 42 U.S.C. S 1983 because at common law a municipality was absolutely immune from punitive damages and in enacting section 1983 Congress

_____

action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances. See 31 U.S.C. S 3730(c)(2)(B) (1994). Therefore, in this case, Dunleavy as relator is prosecuting a qui tam civil action in the name of the Federal Government after the Government has determined that, in its view, no fraud has been committed. Accordingly, we do not consider the question of whether the United States may maintain a suit against a local government under the FCA.

2. The District Court had jurisdiction under 28 U.S.C. S 1331, and the appeal was taken in accordance with Rule 4(a), Fed. R. App. P. We have jurisdiction under 28 U.S.C. S 1291. The questions of law before us are subject to our plenary review. Bowen v. Monus , 172 F.3d 270, 273 (3d Cir. 1999).

did not clearly manifest an intention to abrogate this common law immunity). Similarly, in Genty v. Resolution Trust Corp., 937 F.2d 899 (3d Cir. 1991), we held that municipalities were immune from civil punitive damage awards under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. SS 1961-1968. In reaching our holding in Genty, we cited Fact Concerts and commented that in order to subject municipalities to punitive damage awards, a statute must expressly provide for such an award against a municipality. See Genty, 937 F.2d at 910. Furthermore, we noted that the rationale for exempting a municipal entity from punitive damages awards is firmly grounded in public policy because "assessing punitive damages against a public entity serves neither the retributive nor the deterrent purposes of . . . civil punishment and contravenes public policy by punishing the taxpayers and citizens who constitute the very persons who `are to benefit from the public example which the granting of such damages is supposed to make of the wrongdoer.' " Id. at 910 (citation omitted). Simply stated, we concluded that a local government is presumptively immune from the imposition of punitive damages unless the statutory scheme which creates liability clearly indicates that Congress intended to abrogate the well-settled notion of local governmental common law immunity from punitive damages. See also Doe v. County of Centre, 242 F.3d 437, 456 (3d Cir. 2001) (holding that overcoming common law immunity requires a clear expression of congressional intent).

We now turn to the threshold question on this appeal: whether the damages imposed by the Act are punitive. If the damages are properly characterized as punitive, we must next determine whether Congress expressly intended to abrogate local governmental immunity under the FCA. For the reasons that follow, we believe that the mandatory treble damages imposed by the Act are punitive and that Congress did not expressly abrogate local governmental immunity under the FCA.

A.

When first enacted in 1863, the FCA provided for suits to be brought in the name of the Government by private

6

individuals in a qui tam (in the name of the King) action. The Act imposes liability on any person who knowingly presents a false claim to the Federal Government for payment. 31 U.S.C. S 3729(a) (1994). The current version of the Act imposes a civil penalty between five and ten thousand dollars per false claim plus three times the amount of damages which the Government sustains. 31 U.S.C. S 3729(a) (1994). Recently, in Vermont Agency of Natural Resources v. United States ex rel. Stevens , 529 U.S. 765 (2000), the United States Supreme Court examined the issue of whether a State or State agency is a "person" for purposes of the Act. In reaching its conclusion that a State is not within the meaning of "person" as used in the Act and therefore not amenable to suit under the Act by a qui tam realtor, the Court held that the Act imposes treble damages that are "punitive in nature." Id.  at 784. Thus, the Court has answered the first prong of our inquiry: the FCA's treble damages provision is punitive. Accord United States ex rel. Garibaldi v. Orleans Parish Sch. Bd. , 244 F.3d 486, 491 n.5 (5th Cir. 2001) ("The treble damages imposed by the False Claims Act are punitive damages.") (citing Stevens, 529 U.S. at 784).

Nonetheless, Dunleavy contends that the Supreme Court's characterization of the Act's damages provision is obiter dictum. We do not agree. The Stevens majority stated that "[s]everal features of the current statutory scheme further support the conclusion that States are not subject to qui tam liability," and that one of those features is that "the current version of the FCA imposes damages that are essentially punitive in nature." Stevens, at 783, 784. Clearly, the Court relied on the Act's treble damages scheme in reaching its holding and thus its declaration that the damages scheme is punitive is not dictum. We therefore agree with the Garibaldi court and conclude that the treble damages mandated by the FCA are punitive. See also Genty, 937 F.2d at 914 (holding that the mandatory treble damages scheme of civil RICO statute is punitive in character).

B.

We turn to the second prong of our inquiry: Did Congress express a clear indication to abrogate local governmental

7

immunity under the FCA? We note here that the parties' arguments focus on whether the term "person" as used in the Act encompasses local governments. This argument is simply the other side of the coin with respect to the question before us, namely whether Congress clearly abrogated local governmental immunity under the FCA. If Congress clearly expressed its intention to encompass local governments within the ambit of FCA liability as a"person," then it must also have intended to abrogate the common law immunity of local governments against punitive damages under the FCA. In our view, consistent with our reasoning in Genty, the question is whether Congress intended to disturb local governmental immunity from punitive damages by subjecting local governments to FCA suits. See Genty, 937 F.2d at 914 (noting that the RICO statute expresses no specific intention that municipalities be liable for treble damages); see also Will v. Michigan Dep't of State Police, 491 U.S. 58, 67 (1989) (holding that Congress did not intend to override well-established common law immunities in passing civil rights act).

Dunleavy's assertions that Congress intended to subject municipalities to the FCA's coverage are unpersuasive in light of the fact that the statute offers no clear indication that Congress intended to abrogate local governmental immunity from punitive damages. Indeed, the relevant portion of the Act does not even define the term"person." In Genty, we observed that the civil RICO Act defined the word "person" as "any individual or entity capable of holding a legal or beneficial interest in property." Genty, 937 F.2d at 907 (quoting 18 U.S.C. S 1961(3)). Clearly, this definition of the term "person" is a broad one. Yet we nevertheless found that despite this broad definition of the term "person", Congress did not clearly abrogate local governmental immunity from punitive damages in the context of civil RICO. Moreover, we observed that had Congress intended to subject local governments to punitive damages under RICO, it could have easily so stated, as it has done in other statutes imposing civil liability on local governments. See Genty, 937 F.2d at 914 (citing 15 U.S.C. S 77b(2)) (noting that Congress specifically provided for subjecting local governments to civil damage awards under the securities laws). Other statutes specifically define the

term "person" to include local governments or municipalities, such as the Clean Water Act, 33 U.S.C. S 1362(5); the Resource Conservation and Recovery Act, 42 U.S.C. S 6903(15); the Wild Bird Conservation Act of 1992, 16 U.S.C. S 4903(4); and the Oil Pollution Act of 1990, 33 U.S.C. S 2701(27). Our Genty analysis is equally applicable here. We find nothing on the face of the relevant portions of the FCA as originally enacted in 1863 or in its current form which evidences a clear indication on the part of Congress to subject local governments to punitive damages under the Act. The Act is utterly devoid of any specific intention to subject local governments to its strictures. This lack of clarity in the text of the Act is insufficient indicia of congressional intent to abrogate local governmental immunity from punitive damages under the FCA.

Dunleavy and amicus Taxpayers Against Fraud (False Claims Act Legal Center) argue that the original drafters' intent is immaterial to a determination of Congress' intent to subject local governmental subdivisions to liability under the FCA. He contends the intent of the Congress that enacted the treble damages scheme should control whether or not Congress intended to subject local governments to the FCA. His argument is premised on the notion that if in 1863, Congress intended to encompass local governments within the meaning of the term "person" under the FCA, the subsequent amendment in 1986 to provide treble damages under the FCA is evidence of Congress' intent to subject local governments to punitive damages.

Even if we were persuaded that the intent of the 1986 Congress amending the Act controlled the resolution of this matter, Dunleavy's argument must fail. The 1986 amendments added nothing to the meaning of the term "person" that remotely approaches a clear  expression of Congress' intent to abrogate local governmental immunity. See Stevens, 529 U.S. at 783 n.12 (observing that the term "person" in the FCA has not been altered since the FCA's initial passage in 1863). Moreover, in Genty, we found that Congress' imposition of treble damages in the RICO statute evinced its intent to exclude local governments from the civil RICO statute's coverage. See Genty, 937 F.2d at 914 (Courts will not interpret statutes to overturn well-

9

established common law principles unless Congress so authorizes"); County of Centre, 242 F.3d at 456 (3d Cir. 2001) (noting that Newport instructs us to assume that Congress intended to retain common law immunity absent a clear expression of congressional intent to the contrary). As a result, we cannot say that the imposition of the current treble damages scheme in and of itself evidences Congress' clear intent to abrogate common law immunity and subject local governments to punitive damages awards. We conclude that Congress' imposition of treble damages is powerful evidence that Congress did not intend to subject local governments to punitive damages under the FCA. Accord Garibaldi, 244 F.3d at 493 (stating that the punitive damages regime of the FCA reflects Congress' intent to exclude local governments from liability under the FCA).

Second, Dunleavy points to the legislative history of the 1986 amendments to support his theory that Congress intended to subject local governments to suit under the FCA by qui tam relators. We reiterate that even if we believed that the intent of the 1986 Congress controlled our determination, a question we do not decide here, Dunleavy's argument cannot pass muster in light of the Stevens Court's express rejection of the pertinent 1986 legislative history as erroneous and of questionable value. See Stevens, 529 U.S. at 783 n.12 (noting that the legislative history contained the Senate's erroneous understanding of the meaning of the term "person" as used in the Act). At best, after considering the text of the statute and its legislative history, we find only ambiguity as to whether Congress intended to disturb the well-settled doctrine of local governmental immunity from punitive damages under the FCA. Ambiguity, however, is not enough for Dunleavy to carry the day. There is simply nothing in the FCA's text remotely manifesting a clear expression of Congress' intent to abrogate local governmental immunity against punitive damages under the Act. As a result, we hold that Congress did not intend to disturb local governmental immunity from punitive damages under the FCA by clearly including local governments within the meaning of the term "person." It necessarily follows that the County is immune from claims under the FCA by a qui tam relator due to the mandatory nature of the treble damages

provision. See Genty, 937 F.2d at 911-12 (treble damages awards under RICO are mandatory and therefore municipalities may not be liable under RICO if those damages are punitive).

C.

Dunleavy and the United States, as amicus, invite us to subject the County to "some liability", however, by reading into the statute an exception to the mandatory treble damages scheme. In essence, Dunleavy and the United States argue that we should reduce any treble damages award against a local government to a level that would be deemed compensatory rather than punitive. We decline to create such an exception under the FCA, just as we declined in Genty with the RICO statute. Genty, 937 F.2d at 914. The FCA provides for mandatory treble damages subject to a narrow exception that is not applicable to the case sub judice. See 31 U.S.C. S 3729(a) (providing a reduction from treble damages to double damages when a defendant supplies information concerning the violation prior to their knowledge of governmental investigation). As a result, creating an exception for local governments from the existing damages scheme would require us to rewrite the FCA. Of course, while Congress is free to do this if it chooses, such redrafting is outside the traditional province of the courts. Accord Garibaldi, 244 F.3d at 493. Therefore, we will not disturb the existing statutory damages provisions by reading into the Act an exception from treble damages for local governments. The result, in the end, is that a local government such as Delaware County cannot be subject to liability under the FCA in a qui tam action.

IV.

We conclude that the mandatory treble damages scheme imposed by the FCA is punitive and that local governments are exempt from FCA damages because Congress did not clearly express its intention under the Act to abrogate local governmental common law immunity against punitive damages. As a result, since the FCA does not, as written, permit a court to reduce treble damages awards, we

11

conclude that a local government cannot be subject to suit by a qui tam relator under the Act. For all these reasons, we will affirm the Order of the District Court dismissing Dunleavy's Second Amended Complaint.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

12