The UNITED STATES of America ex rel. Miro SATALICH, Plaintiff,

v.

The CITY OF LOS ANGELES, Metcalf & Eddy Services, Kiewitt Pacific Company, and Marie C. Scully, Defendants.

No. CV 00–08882–GAF (AIJx).

United States District Court, C.D. California.

Aug. 31, 2001.

**1094**

Miro J. Satalich, Rancho Palos Verdes, CA, Pro se.

Leslie E. Brown, Los Angeles City Attorney's Office, Labor Relations, Vivienne Alexis Swanigan–Crenshaw, Los Angeles City Attorney's Office, General Counsel Div., Robert Cramer, Los Angeles City Attorney's Office, Los Angeles, CA, Thomas S. Salinger, Treg A. Julander, Rutan & Tucker, Costa Mesa, CA, Patrick John Duffy, III, Steven B. Copeland, Steven Y. Han, Monteleone & McCrory, Los Angeles, CA, for defendants.

## MEMORANDUM RE: DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS

FEESS, District Judge.

### I.

### INTRODUCTION

This is a *qui tam* action in which Plaintiff, a former Wastewater Electrician for the City of Los Angeles ("the City"), claims that the City and various independent contractors conspired to violate a number of federal statutes including the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, and a federal consent decree, in connection with the renovation and operation of the Hyperion Wastewater Treatment Plant. The City has moved to dismiss Plaintiff's *pro se* Complaint. In a separate order, dated August 28, 2001, the Court ruled on all issues presented by the City's Motion to Dismiss. However, because Plaintiff's FCA causes of action raise important issues not yet clearly resolved by the courts, this Court takes up those issues in this separate memorandum.

The FCA creates two different causes of action that may be brought by an individual plaintiff. First, the FCA authorizes individuals, acting in the name of the United States, to bring suit against "any person" who attempts to obtain federal funds through the submission of false or fraudulent claims for payment. *See* 31 U.S.C. §§ 3729(a), 3730(b)(1). Second, to encourage and protect persons who bring or assist in the investigation and prosecution of such actions, section 3730(h) provides a cause of action to any person whose "employer" discriminates against him in any way (including termination, retaliation, demotion and harassment) because of lawful acts done by the employee in furtherance of an FCA investigation or lawsuit. *See* 31 U.S.C. § 3730(h). This case presents two questions with respect to these statutes: 1) is the City a "person" within the meaning of section 3729 and therefore subject to suit under the FCA; and, 2) irrespective of whether the City is a "person" under section 3729, is the City an "employer" within the meaning of section 3730(h) and therefore subject to suit for adverse employment actions taken against persons within the protected class?

To answer the first question, the Court must interpret both the text of section 3729, and the language of the Supreme Court's decision in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 787, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). In *Stevens*, the

Supreme Court held that *states are not encompassed* within the meaning of "person" under section 3729 and therefore cannot be sued for alleged FCA violations. In contrast, numerous other cases have held that *private corporations are included* within the meaning of "person" and can be sued under the FCA. Since municipalities are both governmental entities and, typically, "corporations" under state law, the Court must determine whether the City is more analogous to a state which is immune from FCA *qui tam* actions, or a private corporation, which is not. Having surveyed the relevant authorities, the reasoning employed in *Stevens* persuades the Court that municipalities are immune from FCA lawsuits. The statute is essentially punitive in nature, and its enforcement against municipalities would place an undue burden on the very taxpayers for whom it was designed to protect.

With respect to the second question, the Court concludes that municipalities are "employers" under section 3730(h). Public policy favors the protection of whistleblowers, and any action by any employer which would chill the disclosure of fraud against the government should be discouraged, notwithstanding the City's immunity from section 3729 liability. The present case, which involves fraud allegations against the City (which is immune) *and* private contractors (who are not) presents a prime example of why a municipality should be liable for discriminatory conduct against whistleblowers. Moreover, because the Court concludes that section 3730(h), unlike section 3729, does not impose punitive damages, the policy considerations that warrant municipal immunity from section 3729 litigation are inapplicable to claims

brought under section 3730(h). Thus, Plaintiff may pursue claims against the City under section 3730(h).

## II.

## FACTUAL BACKGROUND

The issues presented in this case arise from the construction of wastewater treatment facilities, primarily financed with federal funds, pursuant to the terms of a consent decree between the federal government and the City. The following is a brief synopsis of the relevant facts alleged in Plaintiff's *pro se* Complaint.

### A. THE AMENDED CONSENT DECREE [1]

On June 19, 1987, United States District Judge Harry Pregerson signed a consent decree, later amended, that settled litigation between the United States and the City in which the federal government accused the City of discharging untreated sewage into Santa Monica Bay. Under the terms of the Amended Consent Decree ("the ACD"), the City agreed to construct an "energy recovery system" and develop a "complete waste disposal process." (ACD at 7–8.) The ACD also required the City to hire and train a certain number of plant operators, maintenance workers, and engineers. (*Id.* at 11–12.)

The City hired Defendant Kiewitt Pacific Company ("Kiewitt") to construct two phases of the new wastewater treatment facilities and selected Defendant Metcalf & Eddy Services ("Metcalf") to develop and implement the training program for operators of the City's new facilities. (*See* Complaint ("Compl.") ¶¶ 16–18.) Thereafter, the City retained the Marie C. Scully Group ("MCS" or "the MCS Group") to

---

**1.** Certain facts in this section were gathered from the Amended Consent Decree. The Court may properly consult this document to determine the propriety of the City's Motion to Dismiss. *See Cooper v. Pickett,* 137 F.3d 616, 622 (9th Cir.1997) (noting that on a motion to dismiss, courts can consider a document outside the complaint if the document is referenced in the complaint, and there is no dispute as to the document's authenticity).

supervise the training programs developed by Metcalf. (*Id.*)

According to Plaintiff, the United States Department of the Interior provided eighty-percent of the funding necessary to complete the new facilities; the City and the State of California financed the remaining twenty-percent. (*Id.* ¶¶ 13–15.) Plaintiff avers that the approximate cost of the training program was $20,000,000.00. (*Id.* ¶ 29.)

### B. PLAINTIFF'S FCA ALLEGATIONS

From March 30, 1987 to May 10, 1995, when much of the work on these contracts was performed, *qui tam* relator Miro J. Satalich ("Plaintiff") worked as a "Wastewater Electrician II" for the City. (*Id.* ¶ 24.) Plaintiff served in the Human Resources Development Division Training Section ("HRDD") at the Hyperion Wastewater Treatment Plant in Vista Del Mar, California. (*Id.* ¶¶ 24–25.) From that vantage point, Plaintiff claims to have observed evidence of fraud against the United States, although the specifics of these observations are unclear.

To the extent Plaintiff's theory of FCA liability is discernable, he appears to claim that the City conspired with the other named Defendants, and submitted claims to the United States for compensation, despite the fact that the subcontractors the City hired were failing to deliver the training materials required by the ACD. (*Id.* ¶ 41.) For instance, Plaintiff alleges that the City allowed Metcalf to deliver less property and training than required by the ACD. (*Id.* ¶ 33.) Moreover, Plaintiff accuses Metcalf of submitting "plagiarized" maintenance training lesson plans, and failing to develop a comprehensive training program for all of the water treatment plants contemplated by the ACD. (*Id.* ¶ 34.)

Plaintiff also alleges that certain City employees misled Los Angeles City Council members by overstating MCS's consulting capabilities to ensure that the City awarded MCS a multi-million dollar training equipment contract for which it was not qualified. (*Id.* ¶ 39.) Once the City awarded the contract to MCS, Plaintiff claims that MCS failed to perform under the terms of the agreement. From October 1991 through October 3, 1996, City managers allegedly accepted inferior and outdated lesson plans for the "Hyperion C–109 full secondary project." (*Id.*) Moreover, Plaintiff alleges that MCS did not produce one training manual capable of being used in the field to repair, troubleshoot or maintain the "newly-installed C–109." (*Id.*) Plaintiff claims that numerous City officials, as well as the staff in the "Personnel Department," were notified of the City's "fraudulent activities," but that everyone adhered to an "unwritten code of silence." (*Id.* ¶ 40.)

### C. THE CITY'S ALLEGED RETALIATION

Plaintiff alleges that the City "harassed, threatened, [and] intentionally falsified...work records to take steps to fire [Plaintiff]" in retaliation for Plaintiff's investigation and reporting of the allegedly fraudulent activities set forth above. (*Id.* ¶ 24.) Specifically, Plaintiff claims that after the City became aware of his investigatory efforts, it engaged in a barrage of adverse employment actions, which included: subjecting Plaintiff to bogus disciplinary proceedings (*id.* ¶ 53); issuing unfounded oral and written reprimands against Plaintiff (*id.* ¶¶ 28, 56); refusing to acknowledge Plaintiff's grievances or his reports to the "Ethics Committee" (*id.* ¶¶ 54–55); ignoring Plaintiff's treating doctors' recommendations that he seek vocational rehabilitation (*id.* ¶ 58); and transferring Plaintiff to "the dirtiest facility at Hyperion." (*Id.*)

By May of 1995, Plaintiff claims that he feared for his life, and began experiencing

physical side-effects from the stress induced by the City's harassment. On May 10, 1995, Plaintiff took indefinite medical leave. (*Id.*) Despite being on medical leave, Plaintiff claims that the City's retaliatory harassment persisted. According to Plaintiff, City employees called and threatened him at his home (*id.* ¶ 28); illegally submitted "post-fact evidence" in his workers' compensation court trial (*id.*); and refused to honor a "back-to-work slip" signed by his doctor. (*Id.* ¶ 51.) Plaintiff argues that by denying him the right to return to work, the City prevented him from completing ten years of employment, and receiving his retirement pension. (*Id.*)

### D. THE PRESENT LAWSUIT AND THE MOTION TO DISMISS

On August 22, 2000, Plaintiff filed the present *qui tam* action, under seal, alleging ten causes of action against the City, Metcalf, Kiewitt, and the MCS Group.[2] Thereafter, the City, Metcalf, and Kiewitt moved to dismiss Plaintiff's *pro se* Complaint. The Court granted Metcalf's and Kiewitt's Motions to Dismiss in a separate written order. Moreover, the Court granted part, and denied part of the City's Motion to Dismiss in a minute order which preceded this memorandum. This memorandum sets forth in full, the Court's reasoning with respect to Plaintiff's FCA causes of action.

## III.

## DISCUSSION

### A. STANDARD OF REVIEW ON MOTIONS TO DISMISS

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claims asserted

in the complaint. *See* FED. R. CIV. P. 12(b)(6). Dismissal is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Moore v. City of Costa Mesa*, 886 F.2d 260, 262 (9th Cir.1989). In assessing the merits of a Rule 12(b)(6) motion, a court must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn from them. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986) ("We must accept all material allegations in the complaint as true and construe them in the light most favorable to [Plaintiff].").

### B. PLAINTIFF'S FCA CAUSES OF ACTION

In his Second Cause of Action, Plaintiff alleges that Defendants violated the FCA, 31 U.S.C. § 3729, *et seq.* (*See* Compl. ¶ 63.) The City argues that the Court lacks subject matter jurisdiction over this lawsuit, as Plaintiff has not demonstrated that he was the original source of the information pertaining to the alleged fraud. (*See* Defendant City of Los Angeles' Reply Brief ("Reply") at 17–18.) Moreover, the City asserts that as a municipal corporation, it is immune from liability under section 3729. (*See* Memorandum of Points and Authorities in Support of Defendant City of Los Angeles' Motion to Dismiss ("Memo.") at 11–24.) These arguments are addressed in turn.

### 1. The "Original Source" Requirement Applies Only to Publicly Disclosed Information.

The City argues that "federal courts lack jurisdiction over *qui tam* actions

---

**2.** Prior to serving Defendants, Plaintiff provided the United States officials responsible for investigating false claims with all information known to him, pursuant to 31 U.S.C.

§ 3730(b)(2). On February 21, 2001, after two requests for extensions of time for intervention, the United States declined to intervene in this action.

brought under the FCA unless the relator can plead and prove that he is the 'original source' of the information being cited in the complaint." (Reply at 18.) The City claims that in order to demonstrate that he is the "original source of the information" Plaintiff must show that he "(1) has direct and independent knowledge of the information on which the allegations are based; (2) voluntarily provided the information to the government before filing the *qui tam* action; and (3) had a hand in the public disclosure of allegations that are a part of the suit." (*Id.*) According to the City, Plaintiff's failure to plead these elements "compels the dismissal of the second, third and fourth causes of action." (*Id.*) This argument, however, ignores the text of the statute and controlling case law.

■ Section 3730(e) circumscribes the power of courts to hear *qui tam* suits. *See* 31 U.S.C. § 3730(e)(4); *Wang v. FMC Corp.*, 975 F.2d 1412, 1415 (9th Cir.1992). Specifically, where a plaintiff files an FCA action based upon publicly disclosed information, the Court has jurisdiction to hear the suit only where the plaintiff is the "original source" of that information. *See United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 969–70 (9th Cir.1999); *Wang*, 975 F.2d at 1419 ("A whistleblower sounds the alarm; he does not echo it."). Therefore, the inquiry into whether a court may hear a *qui tam* relator's claim can be divided into three parts: (1) Have the allegations made by the plaintiff been "publicly disclosed"? (2) If so, is the lawsuit "based upon" that publicly disclosed information? (3) If so, is the plaintiff an "original source" of the information? *See United States v. Bank of Farmington*, 166 F.3d 853, 859 (7th Cir. 1999); *Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 564 n. 4 (11th Cir.1994).

The threshold inquiry is whether there has been a public disclosure. *Id.* Whether

the plaintiff is an "original source" of the information is immaterial unless there has been such public disclosure. *See United States ex rel. Aflatooni v. Kitsap Physicians Servs.*, 163 F.3d 516, 524 (9th Cir. 1999) (holding that in the absence of public disclosure, the court need not address whether relator was original source of the information); *Wang*, 975 F.2d at 1415 ("Where there has been no 'public disclosure' within the meaning of section 3730(e)(4)(A), there is no need for a *qui tam* plaintiff to show that he is the 'original source' under section 3730(e)(4)(B).").

■ In this case, there is absolutely no indication that the facts alleged in Plaintiff's FCA claims were ever the subject of prior litigation, administrative hearings, or any other type of public disclosure contemplated by section 3730(e)(4). Thus, the City places the cart squarely before the horse by arguing that Plaintiff failed to establish that he was the "original source of the information," before addressing whether the facts giving rise to Plaintiff's FCA claim were publicly disclosed. Having failed to establish the factual predicate necessary to sustain its argument, the City's motion to dismiss the Second, Third and Fourth Causes of Action on jurisdictional grounds lacks any merit and must be **DENIED.** Since the Court has jurisdiction over the case, it will proceed to resolve the remaining FCA issues raised in the present motion.

### 2. Applicability of 31 U.S.C. § 3729 to Municipalities

The City argues that under the reasoning employed by the Supreme Court in *Stevens*, municipalities are not "persons" for purposes of 31 U.S.C. § 3729, and therefore it cannot be sued for alleged FCA violations. (*See* Memo. at 12–14.) In support of this claim, the City argues that Plaintiff seeks a punitive remedy in his

FCA cause of action, and that municipalities are immune from such awards absent an unequivocal assertion of congressional intent to the contrary. (*Id.*) According to the City, Supreme Court precedent and the language of related federal laws provide strong evidence that Congress did not intend to strip municipalities of their immunity from punitive awards when it amended the FCA in 1986. (*Id.* at 16–24.)

Plaintiff contends that the City is a "person" for purposes of the FCA because the term "person" presumptively includes municipal corporations. (*See* Plaintiff's Opposition Brief ("Opp.") at 7.) According to Plaintiff, the legislative history makes clear that in amending the FCA in 1986, Congress sought to impose "remedial" rather than "punitive" damages. (*Id.*) Moreover, Plaintiff argues that local government entities were included within the FCA's reference to persons when the statute was enacted in 1863, and that neither the 1986 amendments, nor the Supreme Court's holding in *Stevens* should alter the scope of the statute. (*Id.* at 7–8.)

For the reasons set forth below, the Court concludes that the City presents the stronger argument. The reasoning of *Stevens,* and the policies underlying the FCA, which is ultimately intended to protect the public fisc (and indirectly the taxpayers), suggest that municipalities are not "persons" under the FCA. To hold otherwise, and to permit suit against the City, would penalize the taxpayers whom the FCA was intended to protect. Plaintiff's authorities do not provide a cogent reason for countenancing such a result.

### a. The FCA and the 1986 Amendments

Congress enacted the FCA in 1863 for the purpose of "stopping the massive frauds perpetrated by large contractors during the Civil War." *United States v. Bornstein,* 423 U.S. 303, 309, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976). As amended, the FCA imposes civil liability upon "[a]ny person" who, *inter alia,* "knowingly presents, or causes to be presented, to an officer or employee of the United States Government…a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a).

The FCA originally imposed double damages and civil penalties for each false claim. *See Dunleavy v. County of Del.,* No. CIV. A. 94–7000, 2000 WL 1522854, at *3 (E.D.Pa. Oct.12, 2000). The Supreme Court considered the double-damages provision of the FCA to be remedial in nature. *See, e.g., Bornstein,* 423 U.S. at 315, 96 S.Ct. 523 ("[P]ast decisions of this Court have reflected a clear understanding that Congress intended the double-damages provision to play an important role in compensating the United States in cases where it has been defrauded."); *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 551–52, 63 S.Ct. 379, 87 L.Ed. 443 (1943) (noting that the "chief purpose of the statute here was to provide for restitution to the government of money taken from it by fraud, and…the device of double damages plus a specific sum was chosen to make sure that the government would be made completely whole.").

There matters stood until 1986, when Congress amended section 3729. Through these amendments, Congress increased the liability imposed by the statute from double to treble damages, raised the civil penalty limit by five times, and added section 3730(d)(5), which provides for attorneys' fees to successful claimants. *See* 31 U.S.C. §§ 3729(a), 3730(d)(5). In light of these significant amendments, courts were forced to decide whether Congress changed the remedial nature of the statute, and if so, whether municipalities were encompassed within its scope.

### b. Pre-*Stevens* FCA jurisprudence

Before the Supreme Court decided *Stevens,* the lower courts were split over

whether states and local governmental entities were "persons" capable of being sued under the FCA. *Compare United States ex rel. Dunleavy v. County of Delaware*, 123 F.3d 734, 738–40 (3d Cir.1997) (holding that *qui tam* relator had right to proceed against county defendant); *United States ex rel. Garibaldi v. Orleans Parish Sch. Bd.*, 46 F.Supp.2d 546, 558–59 (E.D.La. 1999) (concluding that states and municipalities were "persons" under the FCA); *and United States ex rel. Chandler v. Hektoen Inst. for Med. Research*, 35 F.Supp.2d 1078, 1083 (N.D.Ill.1999) (holding that county defendant was a "person" within meaning of FCA for purposes of suit by private plaintiff) *with United States ex rel. Graber v. City of New York*, 8 F.Supp.2d 343, 356 (S.D.N.Y.1998) (holding that state and local government agencies were not "persons" under the FCA).

In 1998, the Second Circuit handed down the leading case on this issue when it decided *United States ex rel. Stevens v. Vermont Agency of Natural Resources*, 162 F.3d 195, 207 (2d Cir.1998). In that decision, the Court concluded that states were persons for purposes of the FCA—impliedly overruling *Graber*, which was at the time, the only published opinion holding that state and local government entities were not "persons." Thus, until the Supreme Court reviewed the *Stevens* decision, the limited case law that addressed the issue held that local agencies could be sued under the FCA. *See United States ex rel. Rosales v. San Francisco Housing Auth.*, No. C–95–4509 CAL, 2001 WL 370176, at *18 (N.D.Cal. Mar.26, 2001); John R. Hallow & Stacie K. Neroni, *The Federal False Claims Act: Can Whistle Blowers Reach State and Local Tax Dollars?* 44 ST. LOUIS U. L.J. 133, 153 (2000) ("The trend seems to favor finding local governments liable under the FCA.").

### c. *Vermont Agency of Natural Resources v. United States ex rel. Stevens*

On May 22, 2000, the Supreme Court abruptly changed the direction of the law when it reversed the Second Circuit's *Stevens* decision, and concluded that states could not be sued under the FCA. *See Stevens*, 529 U.S. at 787–88, 120 S.Ct. 1858. The majority opinion, written by Justice Scalia, presented a two-part holding. First, the Court concluded, on the basis of well developed *qui tam* jurisprudence and the doctrine that an assignee has standing to assert the injury-in-fact suffered by the assignor, that the FCA properly conferred Article III standing on a private individual who brings a *qui tam* action under the FCA seeking redress for injuries suffered by the United States. *Id.* at 772, 120 S.Ct. 1858. In addition, the Court held that states are not included within the term "person" as used in section 3729, and therefore may not be sued in actions brought under the FCA. *Id.* at 787, 120 S.Ct. 1858. Notably, the Court limited its analysis to an interpretation of the statute, and did not reach the question of whether the Eleventh Amendment immunized states from FCA liability. *Id.*

The Court's analysis began with the presumption that the word "person" does not include sovereigns unless there is some affirmative showing of congressional intent to the contrary. *Id.* The Court observed that the liability provision of the original FCA underwent numerous changes since its enactment, but that "none of them suggests a broadening of the term 'person' to include States." *Id.* at 782, 120 S.Ct. 1858. As Justice Scalia put it, the text of the statute does "less than nothing to overcome the presumption that States are not covered." *Id.* at 782, 120 S.Ct. 1858.

The Court also found support for its conclusion in other provisions of the FCA, and related legislation. First, the Court

observed that 31 U.S.C. § 3733, which provides the Attorney General with the power to issue civil investigative demands, expressly defines "person" to include states. *Id.* at 783, 120 S.Ct. 1858. The Court reasoned that the presence of such a provision in section 3733 demonstrates that Congress understood the need to specifically include states when using the term "person" where Congress intended to include states within the scope of a given statutory provision. *Id.* at 783–84, 120 S.Ct. 1858. Because Congress failed to expressly include "states" when it used the term "person" in section 3729, the Court inferred that Congress did not intend FCA liability under section 3729 to encompass states. *Id.* at 784, 120 S.Ct. 1858. Second, the Court noted that the FCA's companion statute, the Program Fraud Civil Remedies Act ("PFCRA") of 1986, 31 U.S.C. § 3801(a)(6), which created administrative remedies for false claims, defined "persons" subject to liability, without including states. *Id.* at 786, 120 S.Ct. 1858. The Court concluded that it would be "most peculiar to subject States to treble damages and civil penalties in *qui tam* actions under the FCA, but exempt them from the relatively smaller damages provided under the PFCRA." *Id.*

Finally, and most importantly for purposes of the present motion, the Court stated that "the current version of the FCA imposes damages that are essentially punitive in nature, which would be inconsistent with state *qui tam* liability in light of the presumption against the imposition of punitive damages on governmental entities." *Id.* at 785, 120 S.Ct. 1858 (citing *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 262–63, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)). Although the Court acknowledged that it had, in the past, labeled damages under the pre–1986 FCA statute as remedial, Justice Scalia unmistakably distinguished the pre- and post–1986 statutes in the following passage:

Although this Court suggested that damages under an earlier version of the FCA were remedial rather than punitive, that version of the statute imposed only double damages and a civil penalty of $2,000 per claim; the current version, by contrast, generally imposes treble damages and a civil penalty of up to $10,000 per claim. The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers.

*Id.* at 785, 120 S.Ct. 1858 (internal citations and quotations omitted). Thus, given the presumption against imposing punitive damages on governmental entities, and the absence of any evidence suggesting a contrary congressional intent, the Court concluded that a state could not be sued under section 3729.

#### d. Post-*Stevens* FCA Jurisprudence

The Supreme Court's opinion in *Stevens* did not squarely resolve the question before this Court: whether municipalities and their agencies are immune from suit under the FCA. The federal courts addressing this issue have split once again. The majority of courts have concluded that municipalities, like states, are immune from FCA claims brought by *qui tam* relators. *See, e.g., United States ex rel. Garibaldi v. Orleans Parish Sch. Bd.,* 244 F.3d 486, 495 (5th Cir.2001) ("The punitive damage regime of the False Claims Act shows a congressional intent that the False Claims Act should not be applied to local governments."); *United States ex rel. Honeywell v. San Francisco Housing Auth.,* No. C99–1936 TEH, 2001 WL 793300, at *4 (N.D.Cal. July 12, 2001) (holding that plaintiff could not maintain a *qui tam* FCA action against a municipal entity); *United States ex rel. Chandler v. Hektoen Instit. for Med. Research,* 118 F.Supp.2d 902, 903 (N.D.Ill.2000) ("[Cook]

County is immune from prosecution under the FCA because it is immune from any award or claim for punitive damages."); *Dunleavy*, 2000 WL 1522854, at *8 (holding that County of Delaware was not a "person" for purposes of FCA liability). In reaching this conclusion, these courts relied upon a combination of the reasoning employed in *City of Newport*, 453 U.S. at 271, 101 S.Ct. 2748 ("considerations of history and policy do not support exposing a municipality to punitive damages"), and a statement made in *Stevens*, 529 U.S. at 784–85 ("the current version of the FCA imposes damages that are punitive in nature, which would be inconsistent with state *qui tam* liability in light of the presumption against imposition of punitive damages on governmental entities.").

At least three district courts, however, have held that municipal entities can be held liable in FCA actions brought by *qui tam* relators. *See, e.g., United States ex rel. K & R Ltd. P'ship v. Massachusetts Housing Fin. Agency*, 154 F.Supp.2d 19, 26 (D.D.C.2001); *Rosales*, 2001 WL 370176, at *25; *United States ex rel. Giles v. Sardie*, CV 96–2002 LGB, at *11 (C.D.Cal. July 27, 2000). In *K & R*, the court opined that holding a municipal agency immune from FCA *qui tam* liability would create a "loophole" unintended by Congress, which would allow municipal entities "with some connection to the state, but [which] are considered 'persons' subject to suit under the FCA, to escape liability for any false claims made to the federal government." *K & R*, 154 F.Supp.2d at 26. *Rosales* and *Giles*, on the other hand, both held that the Supreme Court's discussion regarding the punitive nature of the amended FCA statute was "tangential" or *dicta*, and therefore insufficient to warrant the conclusion that Congress intended municipalities to be immune from *qui tam* FCA suits. *See Rosales*, 2001 WL 370176, at *24; *Giles*, CV 96–2002 LGB, at *11.

### e. *Stevens* is Controlling and Warrants Dismissal of Plaintiff's FCA Cause of Action

■ As the present case involves an FCA allegation against a municipal government, this Court now faces the same task that confronted the courts in the post-*Stevens* decisions discussed above. Having consulted each opinion, and carefully considered the arguments made by the parties to the present action, the Court finds *K & R*, *Rosales* and *Giles* unpersuasive, and concludes that *Stevens* bars FCA suits against municipalities.

### i. The FCA Imposes Punitive Liability

The Supreme Court explicitly stated that the current version of the FCA imposes damages that are "essentially punitive in nature." *Stevens*, 529 U.S. at 784, 120 S.Ct. 1858. The majority of cases following *Stevens* have reached the same conclusion. *See Garibaldi*, 244 F.3d at 491 ("The False Claims Act imposes punitive damages on those who violate it."); *Honeywell*, 2001 WL 793300, at *2 (same); *Dunleavy*, 2000 WL 1522854, at *6 ("Treble damages are a form of punitive damages...."); *Chandler*, 118 F.Supp.2d at 903 ("[T]he treble damages provisions of the FCA are...punitive rather than compensatory.").

Analogous authority involving the Excessive Fines Clause of the Eighth Amendment also supports the conclusion that the FCA imposes penalties that are punitive in nature. *See United States v. Mackby*, 261 F.3d 821, 2001 WL 921177, at *7 (9th Cir.2001). In *Mackby*, a defendant who was convicted of violating the FCA by improperly obtaining Medicare reimbursements, argued that the penalty imposed against him pursuant to section 3729 violated the Excessive Fines Clause of the Eighth Amendment. *Id.* The Ninth Circuit noted that an Excessive Fines Clause

analysis begins by determining whether the payment to the government constitutes punishment for an offense. *Id.* According to the Court, this determination is made by considering whether the sanction serves a retributive or deterrent, as opposed to a remedial, purpose. *Id.* (quoting *Wright v. Riveland,* 219 F.3d 905, 915 (9th Cir. 2000)). Only where a court first determines that a sanction is imposed for punitive purposes, does the ultimate question of whether the payment is grossly disproportionate to the gravity of the defendant's offense arise. *Id.* In *Mackby,* the Ninth Circuit adhered to this analytical framework, and first considered whether the amended FCA provided a remedy or imposed a punishment.

In analyzing the damages provisions of the FCA, the Ninth Circuit found especially noteworthy the FCA's imposition of treble damages in addition to statutory sanctions, which according to the Court, demonstrates a statutory intent to punish. *Id.* Since the Court found that the statutory sanction represented payment to the government, at least in part, as punishment, and the treble damages provision-at least in combination with the Act's statutory penalty provision-was not solely remedial, the Court concluded that both the statutory sanction and the treble damages provisions of the FCA were punitive, and therefore, subject to analysis under the Excessive Fines Clause. *Id.* at 829–30. Thus, *Mackby*'s analysis comports with the conclusions reached by *Garibaldi, Honeywell, Chandler,* and *Dunleavy.*

Finally, jurisprudence from other areas of law, both at the Supreme Court and Ninth Circuit level, suggests that the very nature of treble damages demonstrates an intent to punish. *See American Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.,* 456 U.S. 556, 575, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982) ("[A]ntitrust treble damages were designed in part to punish

past violations of the antitrust laws. . . . [T]reble damages were also designed to deter future antitrust violations."); *Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 639, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) ("The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers."); *Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.,* 940 F.2d 397, 404–05 (9th Cir.1991) ("Since civil RICO damages are not merely compensatory, but are trebled, 18 U.S.C. § 1964(c), *Newport* is compelling."); *Standard Oil of Cal. v. Arizona,* 738 F.2d 1021, 1027 (9th Cir.1984) (characterizing antitrust treble damages as "punitive damages").

### ii. The Punitive Damages Imposed by Section 3729 are Mandatory

The Court could conceivably circumvent the punitive aspect of the FCA by reducing the damages imposed against a municipality to an amount which the Court determined adequately compensated the government. *See Rosales,* 2001 WL 370176, at *33 (suggesting that in appropriate circumstances, damages imposed by § 3729 may be reduced). This approach, however, would require the Court to rewrite the statute, as it already permits a reduction from treble to double damages in certain, limited circumstances. *See* 31 U.S.C. § 3729(a). Given that Congress has explicitly provided for a reduction in damages under specified conditions, the Court should not, and will not, engraft another exception onto the statute based upon the identity of the defendant. *See Stevens,* 529 U.S. at 786 n. 16, 120 S.Ct. 1858; *Garibaldi,* 244 F.3d at 493 ("Any person liable under the FCA is liable, save for those exceptions enumerated in the statute, for treble damages."); *Dunleavy,* 2000 WL 1522854, at *8 (noting that the

doctrine of remittitur has never been used to "evade a statutory mandate to triple whatever damages are found to have been sustained."); *Chandler*, 118 F.Supp.2d at 903 ("[T]he FCA allows a reduction in the mandatory treble damages only in certain instances, none of which are present in the instant case."). Whether such a provision is desirable must be left to the judgment of the legislature that enacted the statute.

### iii. Policy Considerations Favor Municipal Immunity From Punitive Damage Liability

The Supreme Court has held that "considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials." *City of Newport*, 453 U.S. at 271, 101 S.Ct. 2748. In *City of Newport*, the Court observed that "[i]t was generally understood by 1871 that a municipality, like a private corporation, was to be treated as a natural person subject to suit for a wide variety of tortious activity, but this understanding did not extend to the award of punitive or exemplary damages." *Id.* at 259–60, 101 S.Ct. 2748. The Court recognized that imposing punitive damages upon a municipality is, in effect, a windfall to a fully compensated plaintiff, and would be accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill. *Id.* at 267, 101 S.Ct. 2748. Finally, because a municipality is incapable of having malice independent of that of its officials, the Court concluded that damages

awarded for punitive purposes could not sensibly be assessed against the governmental entity itself.[3] *Id.*

The same reasoning that motivated the Supreme Court's decision in *City of Newport* applies with equal force here. An award of punitive damages in this case would burden the taxpayers of Los Angeles, "the very taxpayers and citizens for whose benefit the wrongdoer[s][are] being chastised," *id.* at 263, 101 S.Ct. 2748, for the actions of municipal officials who engaged in the wrongdoing. *Id.* Punishing one particular group of taxpayers while possibly permitting a windfall to a fully compensated plaintiff, would not only fly in the face of the considerations of history and policy that influenced the Supreme Court's decision in *City of Newport*, but would, in the Court's view, be an ineffective means by which to accomplish the goals of the FCA.[4]

### f. Plaintiff's Arguments Are Unpersuasive

Plaintiff raises a host of legal arguments in an effort to maintain his FCA claim against the City. Plaintiff's strongest arguments are briefly considered below.

### i. Municipalities, Which are Corporations, are Presumed to be Persons

Plaintiff argues that unlike states, corporations are presumed to be "persons." (*See* Opp. at 6–8.) Because the City is a municipal corporation, Plaintiff argues that the Court should rely on this presumption,

---

**3.** It bears noting that in *City of Newport*, the Supreme Court relied in part upon *Hunt v. City of Boonville*, 65 Mo. 620 (1877). *See City of Newport*, 453 U.S. at 261–62, 101 S.Ct. 2748. In *Hunt*, the Missouri Supreme Court held that a municipality could not be held liable under a trespass statute, notwithstanding the statute's authorization of such damages against "any person," because the statute imposed mandatory treble damages.

**4.** The City offers two additional reasons why municipal governments should not be considered "persons" for purposes of the FCA. (*See* Opp. at 17–20) (arguing that the language of 31 U.S.C. § 3733(I)(4) and 31 U.S.C. § 3801 support a finding that Congress did not intend section 3729 to apply to municipalities). The Court need not address these arguments, as there is ample support for holding that a municipality is immune under section 3729, independent of these other assertions.

and conclude that the City can be liable under section 3729. (*Id.*)

Plaintiff correctly states the proposition that corporations, and municipal corporations for that matter, are generally presumed to be persons for purposes of statutory construction. *See Stevens* 529 U.S. at 782, 120 S.Ct. 1858 ("[T]he presumption with regard to corporations is just the opposite of the one governing here: they are presumptively *covered* by the term 'person.'"). Moreover, the Supreme Court has observed that this presumption dates back to time of the FCA's enactment. *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 687, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("by 1871, it was well understood that corporations should be treated as natural persons for virtually all purposes of constitutional and statutory analysis."). *See also Louisville, C & C R. Co. v. Letson*, 2 How. 497, 558, 11 L.Ed. 353 (1844) ("[A] corporation created by and doing business in a particular state, is to be deemed to all intents and purposes as a person, although an artificial person, ... capable of being treated as a citizen of that state, as much as a natural person.").

But that is only the beginning of the analysis; exceptions have been created to insure that application of the presumption does not defeat important public policy considerations. One such public policy consideration-the immunity of municipal governments from punitive damage liability-trumps the presumption in this case. *See, e.g., Garibaldi*, 244 F.3d at 493 ("We are convinced that the punitive damages regime of the False Claims Act discussed above reflects a congressional intent that the term 'person' in the liability provisions of the False Claims Act not include local governments."). Thus, the presumption that "person," when used in a statute, normally includes a municipal corporation yields to the policies which preclude the imposition of punitive damages against local governmental entities.

Courts have reached similar conclusions in both RICO and 42 U.S.C. § 1983 cases. The RICO statute provides that "[i]t shall be unlawful for **any person** through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain...any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1964(c) (emphasis added). Notwithstanding both the scope of the statute, which imposes liability on "any person," and the presumption that municipal corporations are persons, the Ninth Circuit in *Lancaster* held that municipalities were not liable under RICO, in part because of the mandatory treble damages imposed by the statute. *See Lancaster*, 940 F.2d at 404 (citing 18 U.S.C. § 1964(c)). Specifically, the Court reasoned that "[s]ince RICO damages are not merely compensatory, but are trebled...*Newport* is compelling." *Id.* at 404–05.

Similarly, section 1983 expressly permits the imposition of punitive damages against **"every person"** who, under color of law, intentionally violates a plaintiff's civil rights. *See* 42 U.S.C. § 1983 (emphasis added); *Morgan v. Woessner*, 997 F.2d 1244, 1254 (9th Cir.1993). The Supreme Court teaches that municipalities can be held liable for civil rights violations where "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." *Monell*, 436 U.S. at 691, 98 S.Ct. 2018. The Supreme Court however, has refused to permit the imposition of punitive damages against municipal and local government entities under section 1983. *See City of Newport*, 453 U.S. at 271, 101 S.Ct. 2748 ("[W]e find that considerations of history and policy do not support expos-

ing a municipality to punitive damages for the bad-faith actions of its officials.").

Thus, while Plaintiff is correct that as a general matter, the term "persons" presumptively includes corporations, and in some cases municipal corporations, courts have carved from this presumption a well established exception in cases where a plaintiff seeks punitive damages against a governmental entity. Accordingly, the Court is unpersuaded by Plaintiff's reliance on the presumption that the term "person" must include municipal corporations.

### ii. Congressional Intent

Plaintiff argues that Congress designed the FCA's treble damages provision to be essentially remedial in nature, and this congressional intent is entitled to deference. (*See* Opp. at 11.) In support of this argument, Plaintiff cites numerous passages from the Congressional Record which suggest that Congress, in amending the FCA in 1986, was motivated by a desire to compensate the United States, rather than punish offenders. *See, e.g.,* S. REP. No. 99–345, 1 (stating that the purpose of the False Claims Reform Act was to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government.").

 Plaintiff's reliance on the legislative history however, overlooks a fundamental principle of statutory construction. Both the Supreme Court and the Ninth Circuit teach that if a statute is clear and unambiguous on its face, the Court need inquire no further. *See Burton v. Stevedoring Servs. of Am.,* 196 F.3d 1070, 1072 (9th Cir.1999). Specifically, courts should not look beyond the plain meaning in order to derive the "purpose" of the statute, when the result, derived from the face of the text, is not absurd. *Id.; see also Ex parte Collett,* 337 U.S. 55, 61, 69 S.Ct. 944, 93 L.Ed. 1207 (1949) (noting that "there is no need to refer to the legislative history where the statutory language is clear."); *Heppner v. Alyeska Pipeline Serv.,* 665 F.2d 868, 870 (9th Cir.1981) ("When confronted with a statute which is plain and unambiguous on its face, courts do not look to legislative history as a guide to its meaning."); *Easson v. Commissioner,* 294 F.2d 653, 656 (9th Cir.1961) ("When a statute is unambiguous, the courts may not look elsewhere for the legislative intent.").

The statute in this case clearly and unambiguously imposes mandatory treble damages on anyone who, *inter alia,* knowingly presents to an officer or employee of the United States Government, a false or fraudulent claim for payment or approval. *See* 31 U.S.C. § 3729(a). Because the Supreme Court and the Ninth Circuit have already decided that the FCA's treble damages provision is punitive, *see Stevens,* 529 U.S. at 784, 120 S.Ct. 1858; *Mackby,* at 29–30, the Court finds nothing ambiguous about the statute. Thus, the Court need not, and will not second guess the text of the statute by consulting its legislative history.

### iii. RICO and Antitrust Cases

Plaintiff argues that antitrust and RICO cases such as *American Soc'y of Med. Eng'rs v. Hydrolevel Corp.,* 456 U.S. 556, 572, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982), *Brunswick Corp. v. Bowl–O–Mat,* 429 U.S. 477, 485–86, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977), and *Agency Holding Corp. v. Malley–Duff & Assocs.,* 483 U.S. 143, 151, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), demonstrate that treble damages serve primarily remedial purposes. (*See* Opp. at 10.)

To the extent Plaintiff's argument is based on antitrust jurisprudence however, it is undermined by the Supreme Court's statements in *Texas Industries,* where the Court noted that "[t]he very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers."

See *Texas Indus.,* 451 U.S. at 639, 101 S.Ct. 2061. The Supreme Court cited this very language in *Stevens,* to support the proposition that the current version of the FCA imposes punitive damages. *See Stevens,* 529 U.S. at 785–86, 120 S.Ct. 1858. Moreover, with respect to Plaintiff's RICO analogy, the Ninth Circuit has held that treble damages under RICO cannot be awarded against municipalities because "such awards burden the very taxpayers and citizens for whose benefit the wrongdoer [is] being chastised." *See Lancaster,* 940 F.2d at 404 (quoting *City of Newport,* 453 U.S. at 263, 101 S.Ct. 2748). Accordingly, Plaintiff's arguments regarding RICO and antitrust jurisprudence are misplaced and unpersuasive.

For the reasons set forth above, the Court concludes that the City is not a "person" for purposes of 31 U.S.C. § 3729(a). Defendant's Motion to Dismiss is therefore **GRANTED,** and Plaintiff's Second Cause of Action is **DISMISSED WITH PREJUDICE.**

### C. *PLAINTIFF'S RETALIATION ALLEGATIONS*

In his Third and Fourth Causes of Action, Plaintiff alleges that the City violated 31 U.S.C. § 3730(h), by harassing and constructively terminating him in retaliation for reporting Defendants' fraudulent scheme. (*See* Compl. ¶¶ 64–65.) Congress added section 3730(h) to the FCA in 1986 to prevent employers from retaliating against "whistleblowers," those who came forward with evidence of fraud against the government. *See United States ex rel. Hopper v. Anton,* 91 F.3d 1261, 1269 (9th Cir.1996). The statute provides a cause of action for any employee who has been "discharged, demoted,...harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee ... in furtherance of an action under [the FCA]...." 31 U.S.C. § 3730(h). A prevailing plaintiff is

entitled to recover "all relief necessary to make the employee whole ... [including] reinstatement, ... 2 times the amount of back pay, interest ... and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees." *Id.*

■ Because the Court has concluded that the City is immune from suit under section 3729, the Court must now consider whether Plaintiff may pursue a section 3730(h) claim against the City. After finding no applicable controlling case law, the Court invited the parties to submit further briefing on the issue. Having considered their submissions, and analyzed the text of section 3730(h), the Court makes the following observations. The language of the statute precludes *any employer* from retaliating against an employee for engaging in lawful actions that further an FCA claim or investigation, irrespective of whether it is the employer that is the target of the FCA investigation. While it may seem unlikely that a non-target employer would engage in retaliatory conduct, this case demonstrates the propriety of interpreting section 3730(h) literally, and permitting the action to go forward. Specifically, this case presents a circumstance where an employer without FCA liability could be in cahoots with other non-municipal entities who are potentially liable, and for that reason may be motivated to silence a whistleblower. Moreover, the remedies provision of section 3730(h) does not impose punitive damages. Thus, the Court is not confronted with the considerations of history and policy which support municipal immunity from section 3729 liability. Given the obvious policy considerations that underlie the enactment of section 3730(h), the Court concludes that Plaintiff should be permitted to maintain this action, irrespective of whether the

City bears any potential liability under section 3729.

### 1. Retaliation Claims are not Dependent Upon a Successful FCA Cause of Action

The City argues that Plaintiff's retaliation claim should be dismissed because liability under section 3730(h) cannot exist absent a viable *qui tam* claim under the FCA. (*See* Defendant City of Los Angeles' Supplemental Briefing Pursuant to Court Order ("Supp.Brief") at 5.) Since a municipality is immune from liability under section 3729, the City claims that Plaintiff's investigation into the City's alleged fraud cannot constitute a lawful act in furtherance of an action under the FCA, as required by section 3730(h). (*Id.*)

Retaliation claims under section 3730(h) are not dependent on a relator's ability to succeed on, or even file, a cause of action under section 3729. *See Hopper,* 91 F.3d at 1269 (holding that in order to engage in protected activity under section 3730(h), a plaintiff must only "investigate[ ] matters which were calculated, or reasonably could lead to a viable FCA action."); *United States ex rel. v. Howard Univ.,* 153 F.3d 731, 739 (D.C.Cir.1998) ("[T]he protected conduct element of [a section 3730(h)] claim does not require the plaintiff to have developed a winning *qui tam* action before he is retaliated against."); *United States ex rel. Ramseyer v. Century Healthcare Corp.,* 90 F.3d 1514, 1522 (10th Cir.1996) ("The case law is clear that a retaliation claim can be maintained even if no FCA action is ultimately successful or even filed."); *Neal v. Honeywell,* 33 F.3d 860, 864 (7th Cir.1994) (finding that § 3730(h) protected plaintiff where litigation was a "distinct possibility"). Thus, the fact that Plaintiff's FCA claim against the City ultimately proved unsuccessful does not, in and of itself, bar Plaintiff from proceeding on a section 3730(h) retaliation claim against the City.

Moreover, even assuming the City's immunity from liability under the FCA prevented Plaintiff from investigating matters which were calculated, or reasonably could lead to a viable FCA action against the City, section 3730(h) is not so limited as to protect only those whistleblowers who investigate matters which could lead to a viable FCA action against their employers. The statute does *not* read: "Any employee who is discharged by his or her employer because of lawful acts done by the employee . . . in furtherance of an action *against the employer* under this section. . . ." Rather, the statute protects employees who are retaliated against for investigating or prosecuting FCA actions against their employers and third parties. *See, e.g., Nguyen v. City of Cleveland,* 121 F.Supp.2d 643, 647 (N.D.Ohio 2000) (holding that an employer could be held liable under section 3730(h) for retaliating against an employee who prosecuted an FCA action against employer's client).

In this case, Plaintiff investigated and is pursuing potentially viable FCA claims against Kiewitt, Metcalf, and MCS, with whom Plaintiff claims the City conspired to defraud the federal government. Because these other Defendants are not cloaked with the municipal immunity enjoyed by the City, Plaintiff's efforts to bring the subcontractor's allegedly fraudulent conduct to the attention of City officials clearly constitute an investigation of matters which could reasonably lead to a viable FCA action. Moreover, as Plaintiff appears to allege that City officials and subcontractors *conspired* to improperly obtain federal funds, the City might have a motive to retaliate against Plaintiff for his investigation into the subcontractors' alleged fraud, even though the City itself is immune from liability under section 3729. Accordingly, the Court concludes that Plaintiff has plead facts sufficient to demonstrate that he engaged in protected ac-

tivity by investigating matters which were calculated, or could reasonably lead to a viable FCA action.

### 2. Section 3730 Imposes Compensatory Damages Against "Employers"

On its face, section 3730(h) applies to all "employers" without exception. Nonetheless, the City contends that the statute should be read, like the FCA, to exempt local governments. (*See* Supp. Brief at 4.) According to the City, section 3730(h)'s remedy of doubling a plaintiff's lost wages is punitive in nature. (*Id.*) The City points out that unless. a contrary intention is clearly stated, courts presume that Congress does not intend to impose punitive damages on governmental agencies. (*Id.*) Because section 3730(h) contains no such statement, the City concludes that the Court should presume that section 3730(h), like the FCA, was not meant to reach municipalities.

Although section 3730(h) provides for the recovery of "2 times the amount of back pay," it expressly states that its damage provisions are designed to "make the employee whole." 31 U.S.C. § 3730(h). Congress' characterization of this remedy as compensatory is entitled to great weight, as the question of whether a statute "is civil or punitive in nature is initially one of statutory construction." *Seling v. Young,* 531 U.S. 250, ——, 121 S.Ct. 727, 734 (2001). Moreover, in other statutes where Congress has provided for the doubling of lost wages, *see, e.g.,* 29 U.S.C. § 216(b) (Fair Labor Standards Act), such damages have been considered compensatory, rather than punitive in nature. *See Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) (holding that liquidated damages under Fair Labor Standards Act, "constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages");

*but see Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 124, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (liquidated damages under the Age Discrimination in Employment Act are "punitive in nature").

The legislative history of section 3730(h) also supports a finding that the double back pay provision is compensatory. Prior to the 1986 amendments, the FCA provided for the doubling of damages, and the Supreme Court concluded that these damages were compensatory. *See Bornstein,* 423 U.S. at 315, 96 S.Ct. 523; *Hess,* 317 U.S. at 551–52, 63 S.Ct. 379 ("[T]he chief purpose of the [FCA's civil penalties] was to provide for restitution to the government of money taken from it by fraud, and that the device of double damages plus a specific sum was chosen to make sure that the government would be made completely whole."). Presumably, Congress was aware of this line of decisions when it amended the FCA in 1986. *Lorillard v. Pons,* 434 U.S. 575, 581, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) ("[W]here ... Congress adopts a new law ... [it] normally can be presumed to have had knowledge of the interpretation given to the [old] law."). At the same time Congress added section 3730(h), it increased the penalty imposed under the FCA to three times actual damages. *See* Pub.L. 99–562, 100 Stat. 3153 (1986). Congress' decision to award double back pay under section 3730(h), rather than to treble the damages as it did under section 3729, further demonstrates Congress' intent that such damages serve compensatory rather than punitive purposes. Thus, the Court finds that the damages imposed by section 3730(h) are compensatory.

### 3. Even if Section 3730(h) Imposes Punitive Damages, the City Could Still be Partially Liable Under the Statute

Even if the double back pay remedy is punitive, it does not necessarily follow that

Congress intended to exempt governmental agencies from all liability for retaliatory conduct. Section 3730(h) creates a remedy for employees who are wrongfully discharged *and* for employees who are "threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment." 31 U.S.C. § 3730(h). Plaintiffs in the latter category would not be entitled to recover *any* back pay if their wages were not affected by an employer's retaliation. Thus, damages awarded under section 3730(h) would be "punitive" only in those limited instances where back pay is necessary to compensate an employee.

Adopting the City's argument, however, would require the Court to interpret the term "employer" to exclude local governments, which would exempt municipalities from all liability under the statute, even when double back pay was neither sought nor available. Such an approach clearly circumvents the policies underlying section 3730(h). Congress intended to provide whistleblowers with a remedy for a variety of forms of discrimination. *See* S.Rep. No. 345, 99th Cong., 2d Sess. 35 (1986), *reprinted in,* 1986 U.S.C.C.A.N. 5266, 5300 (stating that section 3730(h) was intended to protect individuals who assist in discovery and prosecution of fraud because "few individuals will expose fraud if they fear their disclosures will lead to harassment, demotion, loss of employment or any other form of retaliation."). Rather than deny an entire class of plaintiffs a cause of action, the Court finds the better reading

of the statute is that it provides an additional remedy for plaintiffs suing private employers, a remedy that is either unavailable or reduced in magnitude,[5] when the employer is a government entity. *Cf. City of Newport,* 453 U.S. at 262–65, 101 S.Ct. 2748 (recognizing that municipalities' immunity from punitive damage awards under section 1983 does not render them immune from suit altogether).[6]

### 4. Plaintiff Has Plead a Viable Section 3730(h) Claim

Alternatively, the City argues that Plaintiff has failed to plead a retaliation claim under section 3730(h) because Plaintiff failed to allege that "he was an employee investigating a false claim under the Act, that the City knew that [Plaintiff] was investigating an act potentially redressable by the False Claims Act, that the City at a relevant time took an action adverse to its employee, or that the City took the adverse action because of its employee's false claim investigation." (*See* Supp. Brief at 5.)

When seeking legal redress for retaliatory discharge under the FCA, a plaintiff must plead facts which would demonstrate that defendants had been put on notice that plaintiff was either taking action in furtherance of a private *qui tam* action or assisting in an FCA action brought by the government. *See Ramseyer,* 90 F.3d at 1522. In this case, Plaintiff alleges that while employed by the City, he witnessed Defendants' allegedly fraudulent conduct first hand which prompted him to

---

**5.** Unlike section 3729, which comes pre-equipped with exceptions to the treble damages remedy, no such statutory exceptions are provided by the text of section 3730(h). Thus, even if the double back-pay remedy is punitive, and an employee sought back-pay against a municipal employer, a court could conceivably reduce this amount without rewriting the text of the statute.

**6.** It is worth noting that at least one court has suggested that the imposition of all of the remedies contained in section 3730(h) is not mandatory. *United States ex rel. Kent v. Aiello,* 836 F.Supp. 720, 725 (E.D.Cal.1993) ("Common sense instructs that the mandatory phrasing of the statute does not require an order of reinstatement when the plaintiff has not been discharged, or where plaintiff does not seek that remedy.").

file numerous complaints with the "Ethics Committee." Further, he claims to have attempted to have the transcripts of certain staff meetings corrected to reflect the allegedly fraudulent activity that was discussed in those conferences. As a result, Plaintiff alleges that the City subjected him to repeated adverse employment actions including, *inter alia,* threats, transfers, and a refusal to permit Plaintiff to return to work. When read with the required liberality afforded to *pro se* litigants, *see Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the Court concludes that Plaintiff has met his burden of pleading a retaliation claim under section 3730(h).

### 5. Timeliness of Plaintiff's Retaliation Claim

Finally, the City argues that Plaintiff's retaliation claim is untimely because Plaintiff "alleges he terminated his City employment in 1995...[and] no act constituting wrongful termination or other employee retaliation could have occurred after that date." (Reply at 22.)

In creating section 3730(h), Congress failed to include a specific statute of limitations for such claims. *See United States ex rel. Lujan v. Hughes Aircraft Co.,* 162 F.3d 1027, 1034–35 (9th Cir.1998). The Supreme Court teaches that where Congress does not supply an express statute of limitations governing a federal cause of action, "Congress intended that the courts apply the most closely analogous statute of limitations under state law." *Id.* at 1035 (quoting *Reed v. United Transp. Union,* 488 U.S. 319, 323, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989)). The Ninth Circuit has held that in section 3730(h) cases, the most closely analogous statute of limitations under California law is the one-year statute applicable to wrongful termination in violation of public policy. *Id.*

Although it appears from the pleadings that a majority of the conduct constituting Plaintiff's retaliation causes of action may be barred by the applicable one-year statute of limitations, the Court cannot say with any degree of certainty that *all* of Plaintiff's retaliation claims are untimely. Contrary to the City's argument, the pleadings do not clearly indicate if and when Plaintiff's employment with the City ended. On one hand, Plaintiff appears to allege, in one section of his Complaint, that his employment ended as early as 1995. (*See* Compl. ¶ 24.) On the other, the Complaint also describes Plaintiff as "a civil employee, on medical leave" from the City, which suggests that Plaintiff is still employed by the City. (*Id.* ¶ 1.)

Moreover, even if Plaintiff's employment with Defendant was terminated over one year prior to the time he filed his Complaint, this does not necessarily require the Court to dismiss Plaintiff's retaliation claims on timeliness grounds, given the facts alleged in this case. Plaintiff's Complaint contains allegations of previous workers' compensation litigation, and the Court is aware that Plaintiff unsuccessfully attempted to file this lawsuit in intervention on numerous occasions before a different federal judge. Thus, issues such as equitable tolling might effect the Court's determination as to the timeliness of Plaintiff's Third and Fourth Causes of Action. As the timeliness of Plaintiff's section 3730(h) claims turn on unresolved factual inquiries, the Court declines to reach that issue on the present motion.

### IV.

### CONCLUSION

For the reasons set forth above, the City's Motion to Dismiss in **GRANTED IN PART** and **DENIED IN PART.** The City's Motion is **GRANTED** as to Plaintiff's Second Cause of Action for violations

of the FCA, and that claim is **DIS-MISSED WITH PREJUDICE.** The City's Motion to Dismiss is **DENIED** as to Plaintiff's Third and Fourth Causes of Action for retaliation in violation of section 3730(h).

IT IS SO ORDERED.